HOLLAND & KNIGHT LLP
Jennifer L. Hernandez, Esq. (CA SBN 114951)
*jennifer.hernandez@hklaw.com*
Kevin J. Ashe, Esq. (CA SBN 312938)
*kevin.ashe@hklaw.com*
Rafe Petersen, Esq. (*pro hac vice*)
*rafe.petersen@hklaw.com*
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

*Attorneys for Proposed Defendant-Intervenors,
Community Build, Inc., Southern Christian
Leadership Conference of Greater Los Angeles,
Los Angeles Metropolitan Churches, NewStart
Housing Corporation, The Two Hundred
for Homeownership, Farmworkers Institute
for Education & Leadership Development,
League of United Latin American Citizens of
California, and La Cooperativa Campesina
de California.*

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, DEFENDERS OF WILDLIFE, and SIERRA CLUB,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. BUREAU OF LAND MGMT.; DEBRA HAALAND, Secretary of Interior; NADA CULVER, Senior Advisor to the Secretary of Department of Interior; KAREN MOURITSEN, California Director, Bureau of Land Mgmt.; ANDREW ARCHULETA, California Desert District Manager, Bureau of Land Mgmt.; MICHAEL AHRENS, Needles Field Office Manager, Bureau of Land Mgmt.,<br><br>Defendants. | Case No.: 2:21-cv-02507-GW-AS<br><br>**PROPOSED DEFENDANT-INTERVENORS COMMUNITY BUILD, INC., ET AL.'S REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:   March 10, 2022<br>Time:              8:30 a.m.<br>Courtroom:       9D<br>Judge:           Hon. George H. Wu<br><br>Complaint Filed: March 23, 2021 |

1

**<u>REPLY</u>**

Pursuant to Civil Local Rule ("LR") 7-10, Proposed Defendant-Intervenors Community Build, Inc. ("CBI"), Southern Christian Leadership Conference of Greater Los Angeles ("SCLC"), Los Angeles Metropolitan Churches ("LAM"), NewStart Housing Corporation ("NewStart"), The Two Hundred for Homeownership ("Two Hundred"), Farmworkers Institute for Education & Leadership Development ("FIELD"), League of United Latin American Citizens of California ("LULAC"), and La Cooperativa Campesina de California ("La Cooperativa") (collectively, the "Disadvantaged Communities," "DACs" or "Proposed Intervenors") submit this Reply to Defendants' Response to Proposed Intervenors' Motion to Intervene (filed Feb. 17, 2022, Dkt. No. 73).

This Reply is based on the following Memorandum of Points and Authorities and the Declaration of Kevin Ashe, including the attached letter from Adán Ortega, Executive Director, California Association of Mutual Water Companies to Honorable Tommy Beaudreau (2/24/2022) ("Ashe Dec").

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES'
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

# **Table Of Contents**

TABLE OF CONTENTS............................................................................................I

TABLE OF AUTHORITIES ...................................................................................II

MEMORANDUM OF POINTS AND AUTHORITIES.......................................... 1

INTRODUCTION.................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.      THE MOTION TO INTERVENE WAS TIMELY ....................................... 3

II.     THE PROPOSED INTERVENORS HAVE A SIGNIFICANT INTEREST IN THIS LITIGATION .................................................................................... 4

    A.   THE PROPOSED INTERVENORS HAVE A PROTECTABLE RIGHT TO INTERVENE IN DECISIONS IMPACTING WATER SUPPLY ................................................... 4

    B.   DEFENDANTS' INTERESTS ARE NOT "SPECULATIVE," AND DEFENDANTS' SELECTIVE CITATIONS TO THE PROJECT'S ENVIRONMENTAL IMPACT REPORT IGNORES THE FACT THAT THIS REPORT DEMONSTRATES THAT THE PROJECT COULD SUPPLY WATER TO THE DACS ................................................................................. 7

    C.   THE AMOUNT OF WATER THE PROJECT COULD PROVIDE IS ANYTHING BUT "INSIGNIFICANT," TO PEOPLE WHO LACK CLEAN AND RELIABLE WATER SOURCES AND LIMITED HOUSING ................................................................. 10

    D.   THE DACS' INTEREST IN IMPROVED WATER QUALITY RESULTING FROM THE PROJECT SUPPORTS INTERVENTION.......................................................... 12

    E.   THE DACS' INTEREST IN ENVIRONMENTAL JUSTICE PRINCIPLES SUPPORTS INTERVENTION ............................................................................... 14

III.    CADIZ DOES NOT ADEQUATELY REPRESENT THE DACS' INTERESTS IN THIS CASE ....................................................................... 16

IV.     THE DACS' PARTICIPATION IN THIS MATTER SHOULD NOT BE RESTRICTED. ........................................................................................... 17

CONCLUSION ...................................................................................................... 18

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES'
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

**Table of Authorities**

**Cases**

*California Dump Truck Owners Ass'n v. Nichols*
  275 F.R.D. 303 (E.D. Cal. 2011) ........................................................... 16

*California Trout, Inc. v. United States Bureau of Reclamation*
  115 F.Supp.3d 1102 (C.D. Cal. 2015) ...................................................... 5

*California v. Bernhardt*
  472 F.Supp.3d 573 (N.D. Cal. 2020) ...................................................... 15

*Harbor Against Land Takeover v. U.S. Forest Serv.*
  881 F.2d 1083 (9th Cir. 1989) ................................................................. 6

*Northwest Env't Def. Ctr. v. United States Army Corps of Engineers*
  479 F.Supp.3d 1003 (D. Or. 2020) .......................................................... 5

*Sagebrush Rebellion, Inc. v. Watt*
  713 F.2d 525 (9th Cir. 1983) ................................................................. 16

*Sw. Ctr. for Biological Diversity v. Berg*
  268 F.3d 810 (9th Cir. 2001) ................................................................. 16

*U.S. v. City of Los Angeles*
  288 F.3d 391 (9th Cir. 2002) ................................................................... 5

*Westlands Water Dist. v. United States*
  700 F.2d 561 (9th Cir. 1983) ............................................................... 6, 7

**Federal Statutes**

42 U.S.C. § 4331(c) ..................................................................................... 15

**Other Authorities**

FRCP 24(a) .................................................................................................. 1

FRCP 24(b) .................................................................................................. 1

PROPOSED DEFENDANT-INTERVENORS COMMUNITY BUILD, INC., ET AL.'S
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On February 4, 2022, nine separate community and civil rights groups, representing a wide spectrum of interests of disadvantaged communities in California moved to intervene in this case as a matter of right pursuant to Federal Rule of Civil Procedure ("FRCP") 24(a)(2), or, in the alternative, through permissive intervention pursuant to FRCP 24(b). The Proposed Intervenors' Motion to Intervene ("Motion") explained that each group has a significant, protectable interest in access to the safe, clean, reliable and affordable water that the Cadiz Valley Water Conservation, Recovery and Storage Project ("Project") will deliver to disadvantaged communities throughout Central and Southern California, as well as an interest in ensuring that tenets of environmental justice are accounted for in this case. (Dkt. No. 57 at 7). The supporting declarations attached to the Motion confirmed that Defendants' request to voluntarily remand and vacate a key component of the Project jeopardizes the provision of clean water, public health and safety, and the development of critical housing in underserved communities that the Proposed Intervenors represent. (Dkt. No. 57-1 to 57-9). Defendants do "not dispute that the Proposed Intervenors and the communities they represent have a significant interest in obtaining reliable sources of clean water and that such water is necessary for the development of housing in those communities." (Dkt. No. 73 at 7).

Yet, in response to the Motion, Defendants argue that these rights are not implicated by this case. In order to prevent the DACs' intervention as a matter of right, Defendants argue (1) the amounts of water that could be purchased by local water utilities and delivered to disadvantaged communities is "so small that [it] could not make a significant difference …" and (2) it is uncertain whether water from the Project will ever reach such communities. *Id.* at 2. Until now, Defendants have not disputed the benefits the Project will offer to disadvantaged communities. Indeed, Defendants' motion for remand acknowledges that the subject of this litigation – a

- 1 -

right-of-way ("ROW") grant to allow the conversion of idle natural gas infrastructure to transport water – would provide an alternative source of water for water providers and particularly rural areas and disadvantage communities. (Dkt. No. 42 at 11).

First, Defendants argue that the Proposed Intervenors' interests are "speculative," under the misperception that the disadvantaged communities are not expected to obtain water from the Project. To support their claims, Defendants ignore the declarations and selectively cite to various documents in hopes of showing that there is no connection between the challenged Project and provision of water to such communities. They argue that the communities themselves do not hold contractual rights to such water. Second, Defendants belittle the DACs' interests, claiming that even if such water reached these communities, the amount of water could not make a significant difference relative to the regional water crisis. None of this is true.

This Reply addresses Defendants' misperceptions of the nature of the Project and explains how the Project will in fact make a significant difference in the lives of many and in particular the communities served by Proposed Intervenors. As explained below, the fact that the Project is essential to water solutions for various disadvantaged communities is anything but speculative and the amounts to be provided are not "insignificant." The facts demonstrate that water utilities serving these communities could deliver more than 100,000 AFY of new and stored water supplies to disadvantaged communities in Central and Southern California through conservation and capture of water that would otherwise be lost to evapotranspiration. This water supply, and the storage and conveyance infrastructure to manage water supplies, from the Project is critically needed to relieve pressure on severely over-drafted groundwater supplies, replace supplies from distressed rivers that feed the State Water Project and Colorado River Aqueduct during extended drought conditions, and provide small water systems with back up supplies necessary to meet drought contingency planning required by state law.

The water supply from the Project is also crucial to allow disadvantaged

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 2 -

communities to construct additional housing and fulfill statutorily-mandated regional housing needs. By offering well-documented supplies of water to water utilities serving these communities, and allowing suppliers to store up to 1 million acre feet ("MAF")[1] of water that can be used during normal, dry-year, and multi-dry year periods, the Project will enable the construction of hundreds of thousands of new residential units. In addition to water supply interests, the Proposed Intervenors have demonstrated a significant, protectable interest in the improved water quality that the Project will offer, as well as ensuring environmental justice principles are accounted for in this litigation.

For these reasons, as explained in the points and authorities that follow, the Court should grant the Proposed Intervenors' Motion.

## ARGUMENT

### I.   THE MOTION TO INTERVENE WAS TIMELY

Defendants do not contest to the timeliness of the Proposed Defendant-Intervernor's motion. (Dkt. No. 73 at 6-7). Although Defendants do not object to timeliness, they unnecessarily suggest that an October 14, 2021 Joint Status Report (Dkt. No. 37) should have informed the DACs that circumstances in this case had changed. The Status Report merely stated Defendant Bureau of Land Management's ("BLM") "intention" to remand the ROW Grant subject to this case. (Dkt. No. 37 at 2). The Joint Status Report did not, however, indicate that Defendants were seeking a remand with vacature of the ROW grants subject to this litigation. A remand, which would leave the decision in place, is fundamentally different from a remand with vacature.

Moreover, as noted in the declaration of Jose Luis Barrera Novoa (of LULAC), before Defendant BLM stated its intention to seek revocation of the ROW Grants, representatives of underserved and minority communities made several attempts to

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

---

[1] See, Cadiz Valley Water Conservation, Recovery, and Storage Project Final Environmental Impact Report at 3-4.

meet with Department of Interior Department officials, in hopes of informing BLM of the impact such an action would have on the DACs. (Dkt. No. 57-7 at ¶ 18). These requests were rebuffed. Defendants' failure to respond, which is indicative of a disregard for the communities most affected by BLM's decision, should not be used against Proposed Intervenors.

Under the totality of the circumstances test, Proposed Intervenors' motion is timely. (*See* Dkt. No. 57 at 18). The Motion was made before any substantive responsive pleadings were made in this case, and Proposed Intervenors can intervene in this case without causing delay to the current schedule on Defendants' motion for remand. No party, including Defendants, have argued that they will be prejudiced by Proposed Intervenors' participation.

## II.   THE PROPOSED INTERVENORS HAVE A SIGNIFICANT INTEREST IN THIS LITIGATION

Defendants assert that the Proposed Intervenors have failed to demonstrate the requisite protectable interest under the theory that the connection between the BLM's decision to grant Cadiz the right to transport water and the Proposed Intervenors' interest in clean, reliable water is "speculative." (Dkt. No. 73 at 6). This argument ignores the relevant case law and the declarations provided by Proposed Intervenors, and mischaracterizes several key facts.

### a.  The Proposed Intervenors Have a Protectable Right to Intervene in Decisions Impacting Water Supply

The crux of Defendants argument that the Proposed Intervenors have failed to demonstrate a "significantly protectable interest" in this matter is the theory that the Proposed Intervenors have not asserted a contractual right to the water from the Project. (Dkt. No. 73 at 7). Defendants claim that without a contract, Proposed Intervenors "contingent interest" is not sufficient as it is spread equally among virtually all water users in Southern California. (Dkt. No. 73 at 7).

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES'
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Defendants' implication that Proposed Intervenors must themselves assert a contractual right to water disregards Ninth Circuit's case law which has held that "[n]o specific legal or equitable interest need be established to satisfy [the interest] test. Instead, the interest test directs courts to make a practical, threshold inquiry." (Dkt 57 at 22; citing *U.S. v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002)). An interest is a significant protectable interest if (1) it is protectable under some law and (2) it is related to the claims at issue. *Citizens for Balanced Use*, 647 F.3d at 897. Accordingly, the Proposed Intervenors are not required to demonstrate a "contractual right" to the water from the Project.

Water users may intervene as a matter of right in cases impacting water supply where the contracts and agreements being litigated will impact their interests in water access.[2] Similarly, municipal governments, who represent their constituents but do not typically have direct contracts with water suppliers, have the right to intervene. *See*, *Nw. Env't Def. Ctr., Wildearth Guardians*, No. 3:18-CV-00437-PK, 2018 WL 11278336 (D. Or. July 30, 2018) (court allowing City of Salem to intervene as of right in environmental challenge to the Willamette River Basin Flood Control Project, where the City "relie[d] on Detroit Lake for its water supply," and the Army Corps of Engineers was considering plans which could include draining Detroit Lake).[3]

Here, the Proposed Intervenors represent communities within various service areas of water utilities that have contracts to obtain water from the Project that will be carried by the pipelines. (Dkt. No. 57 at 15-17); see also Sausedo Dec., at ¶¶ 12-16 (Dkt. No. 57-1). Proposed Intervenors – whose mandated taxes and utility bills pay

---

[2] See, e.g., *California Trout, Inc. v. United States Bureau of Reclamation*, 115 F.Supp.3d 1102, 1119-20 (C.D. Cal. 2015), *Northwest Env't Def. Ctr. v. United States Army Corps of Engineers*, 479 F.Supp.3d 1003, 1010 (D. Or. 2020) (effect of litigation on operational and structural changes to water project).

[3] There is some level of irony that the Defendants primary argument is that the historically marginalized parties who are desperately fighting for water supplies for their communities cannot intervene in a case unless they can prove a direct contractual dedication of such water. Presumably, Defendants would support the intervention of the residents of Thousand Oaks, who Defendants suggest have a right to this water.

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES'
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

for water supplies, water treatment and water infrastructure – will suffer direct practical impairment of their recognized rights to clean water, environmental justice and housing if the relief Plaintiffs seek is granted. Denying or delaying the ROW Grants at issue in this case will disrupt small water systems' development of drought contingency plans, as required under state law. See, Ashe Decl., Exhibit 1 (California Association of Mutual Water Companies ("CalMututals") correspondence to the Deputy Secretary of the Department of the Interior, noting that the Northern Pipeline could potentially improve supply options for more than 20 state-designated disadvantaged communities.)

Lastly, Defendants' reliance on *Westlands Water Dist. v. United States*, 700 F.2d 561 (9th Cir. 1983) is misplaced. (Dkt. No. 73 at 8). In that case, plaintiffs Westlands Water District sought injunctive and declaratory relief asserting contractual rights respecting the delivery of water by the United States. The Environmental Defense Fund ("EDF") sought to intervene "based on what it regards as enlightened public policy." *Westlands*, 700 F.2d at 563. In rejecting EDF's intervention, the court focused on the nature of the underlying suit, stressing the fact that it concerned contractual interpretation, not public policy:

> *What is disputed is the question, essentially one of law, as to the legal effect of the contracts and of such assurances and representations as may have been made by the government.* … We hold that EDF has failed to show that it meets the requirement for intervention as of right under Rule 24(a) in that it has no interest in the subject matter of Westlands's [sic] *contract* suit.

*Id*. at 563 (emphasis added). Thus, the court's discussion in Westlands *supports* Proposed Intervenors' right to intervene in cases where federal approvals and public policy under the National Environmental Policy Act ("NEPA") are at issue. *See Harbor Against Land Takeover v. U.S. Forest Serv.*, 881 F.2d 1083 (9th Cir. 1989) (environmental group permitted to intervene in case involving timber harvesting limitation; noting that "[t]his case does not involve an essentially private contractual

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

1   dispute as appellee contends, and hence our decision in *Westlands . .* is inapposite.")

2   (internal citations omitted).

3        **b.  Defendants' Interests are not "Speculative," and Defendants'**

4          **Selective Citations to the Project's Environmental Impact Report**
           **Ignores the Fact that this Report Demonstrates that the Project**

5          **Could Supply Water to the DACs**

6          Defendants argue that "the connection between the BLM's decision to grant

7   Cadiz the right to transport water and the Proposed Intervenors' interest in clean,

8   reliable water is speculative." (Dkt. No. 73 at 6). While citing to the "public record,"

9   Defendants' cursory review of such documents and selective citations ignore the fact

10  that the Final Environmental Impact Report ("FEIR") for the Cadiz Water Project

11  prepared under the California Environmental Quality Act discusses how the Project

12  will benefit disadvantaged communities. The FEIR states that an annual average of

13  50,000 AFY of stored groundwater would be pumped from the basin over a 50-year

14  period for delivery to Project Participants (e.g., Cal Water, Golden State), and that the

15  maximum withdrawal would be limited to 75,000 AFY. FEIR at 3-2. The FEIR

16  explains that Project Participants could also forego annual groundwater delivery in

17  wet years, and "store" some or all of their annual share of water in the aquifer system

18  for a future dry year, a process known as "carry-over storage." *Id*. The storage

19  component of the Project will allow water providers to send surplus surface water

20  supplies, when available, to the Project area to be recharged into the groundwater

21  aquifer system via spreading basins and held in storage until needed in future years.

22  (FEIR at 4.9-76). When needed, the stored surface water would be pumped out of the

23  aquifer system and returned to the appropriate participating provider. *Id*. The FEIR

24  also acknowledged the 30,000 AFY capacity of any converted natural gas pipelines.

25  *Id*. In effect, the repurposed pipeline will allow small water systems to gain a back-up

26  supply of water, increase system flexibility and increase water reliability. Lizarraga

27  Dec. at ¶ 15 (Dkt. No. 57-8). The availability of banked water is crucial to provide

28  water during times of drought. Apodaca Dec., at ¶ 5 (Dkt. No. 57-5). The simple fact

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES'
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

is that more water in the system directly benefits the DACs in the water service areas

that will receive more water due to the Project's 1 MAF of storage capacity in

addition to new supplies from available groundwater

In an attempt to attenuate the Proposed Intervenors' interest in water supply

from the Project, Defendants claim that Cal Water – one of the local water utilities

with a 5,000 AFY water option in the Project – would supply such water "solely" to

the West Lake District, an affluent development community in the City of Thousand

Oaks. (Dkt. 73 at 10, 11). Defendants allege that the FEIR singles out only one

community to receive this potential water from the Cadiz Water Project." *Id.* If

Defendants read the FEIR, they would know this is untrue:

> Cal Water would utilize conserved Project water to serve one of its water
> systems, the Westlake District, which is an 8,200 acre community located in
> the eastern section of Ventura County within the City of Thousand Oaks, and
> *may also use Project water to serve its Dominguez and East Los Angeles
> Districts*."

FEIR at 3-21 (emphasis added). Cal Water's "Rancho Dominguez District" includes

Hawthorne, Carson, and portions of Compton, Long Beach, and Los Angeles – the

same communities represented by certain Proposed Intervenors in Southern

California.[4] The FEIR further explains that the other water utility serving certain

DACs (Golden State) would convey water from the Project to disadvantaged

communities. See, FEIR at 3-20. ("Golden State would utilize conserved Project

water to serve 17 customer service areas primarily in Regions II [Los Angeles and

Orange Counties] and III [eastern Los Angeles County and in Orange, San

Bernardino, and Imperial Counties], but including one (Simi Valley) in Region I."

These clear passages from the FEIR directly rebut the false narrative that water

utilities with an option contract to the Project (Cal Water, Golden State) would never

send such water to disadvantaged communities.

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

---

[4] https://www.calwater.com/district-information/?dist=rd

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES'
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

In a similar vein, Defendants attempt to attenuate Proposed Intervenors' interests in the Central Valley (e.g., FIELD, LULAC, La Cooperativa) by claiming they "point to not even a single contract for water delivery to the communities they serve," and can only allege that the Project "could" connect to the water systems. (Dkt. 73 at 10-11). In 2014, San Luis Water District ("SLWD") and Cadiz entered into a contract for 10,000 AFY of water from the Project.[5] SLWD, a water district that services areas of Fresno and Merced counties, entered into the contract to diversify its water supplies and obtain greater water supply reliability. The water made available by Cadiz can be exchanged by SLWD for State Water Project water, and distributed to the City of Los Banos and Santa Nella Water District, who in turn, can use the water to reduce their reliance on existing groundwater sources.

Beyond the SLWD's contract (which directly refutes Defendants' point), a fundamental purpose of the Project is to provide water storage for already adjudicated groundwater areas. (Dkt. No. 57 at 16-17; *see also* Villarino Dec. at ¶¶ 14-16). As explained by Mr. Lizarraga, the pipeline will improve supply options for disadvantaged communities and augment storage, which will improve water quality and address water debt. Lizarraga Dec. ¶ 14. (Dkt. No. 57-8). The pipeline could improve water supply options for more than 20 state-designated disadvantaged communities, and aid smaller water systems' legal obligation for develop drought contingency plans that identify back-up water supplies in dry and multiple-dry year scenarios. *See,* Letter from Adán Ortega, Executive Director, California Association of Mutual Water Companies (Ashe Dec. at Exhibit 1).

///

///

///

///

---

[5] This is discussed in a 2014 addendum to the Cadiz Valley Water Conservation, Recovery, and Storage Project EIR, available at https://ceqanet.opr.ca.gov/2011031002/7

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES'
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

### c. The Amount of Water the Project Could Provide is Anything But "Insignificant," to People Who Lack Clean and Reliable Water Sources and Limited Housing

Defendants diminish the Proposed Intervenors' interests by claiming the motion "overstates the significance" of the water that the Project could provide to the impoverished and underrepresented communities that the Proposed Intervenors support. (Dkt. No. 73 at 7). In Defendants view, because the Project cannot by itself solve all of California's water supply issues, the comparative effect of the Project is "insignificant." Specifically, Defendants contend that the 50,000 AFY of water the Project could provide to the Central Valley and Southern California is "insignificant" relative to the overall regional demand. (Dkt. No. 73 at 7). Defendants point to the "overall need of the Metropolitan Water District" and its projected water demand figure of 5.156 million AFY as an example of how the limited amount of water from the Project will not directly help Proposed Intervenors efforts to provide reliable water to disadvantaged communities. Defendants cite certain percentages (e.g. "Golden State's option to receive 5,000 AFY from the Cadiz Water Project would represent only 3% of its projected demand") (Dkt. No. 73 at 8-9), to disguise the fact that even a small percentage of the demand being met equates to hundreds of thousands of people actually benefitting.

Simply put, Defendants' position that the pipelines will carry only a "limited" amount of water is not only untrue, but it demonstrates a clear lack of awareness over the severity of California's current water supply and housing shortage crises. The annual average of 50,000 AFY of stored ground water translates to approximately 16.3 *billion* gallons of water per year. [6] The 30,000 AFY of water that could be transported via the Northern Pipeline translates to approximately 9.75 *billion* gallons of water per year.

The Metropolitan Water District's 2020 Urban Water Management Plan (June 2021) ("UWMP") – cited by Defendants (Dkt. No. 73 at 7-8) – projects that

---

[6] One (1) AFY equals approximately 325,851 gallons of water.

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES' REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

"multifamily water use is estimated to increase by 28 percent," which is more than triple the growth of single family housing. See, UWMP at A.1-8.[7] The UWMP also projects that total multifamily housing water demand within its service area will increase from 605,000 AFY in 2020 to 776,000 AFY by 2045, a net increase of 173,000 AFY. UWMP at A.1-13. A new water supply of 50,000 AFY would satisfy nearly 30% of new multifamily water demand projected by Metropolitan Water District by 2045. Using the UWMP's projection of 2.9 people per unit by 2045, a new water supply of 50,000 AFY would provide enough water to meet the indoor water demand for 279,856 units under the existing state standard of 55 gallons per capita per day ("gpcd"), 366,479 units under the 42 gpcd standard for 2030 recommended by the Department of Water Resources and State Water Resources' Control Board.[8] The 5,000 AFY option contracts that Cal Water and Golden State hold in the Project (which Defendants cast aside as "insignificant") each would supply enough water to satisfy indoor water consumption for 27,985 new units.

To understand how significant this water supply is in addressing California's current housing crisis, one needs to look no further than the most recent Regional Housing Needs Assessment ("RHNA") allocations. RHNA goals are mandated by California's housing laws as part of the periodic process of updating local housing elements in General Plans, and inform local agencies of their share of new housing needs. In Southern California, the Southern California Association of Government ("SCAG") recently adopted its Sixth Cycle RHNA Plan, which covers the planning period October 2021 through October 2029.[9] The Sixth Cycle RHNA Plan allocates a substantial amount of new residential units in the disadvantaged communities

---

[7] The Urban Water Management Plan is available at:
https://www.mwdh2o.com/media/21641/2020-urban-water-management-plan-june-2021.pdf
[8] See, *Public Review Draft Report to the Legislature on Results of the Indoor Residential Water Use Study* at 82, available at https://water.ca.gov/-/media/DWR-Website/Web-Pages/Programs/Water-Use-And-Efficiency/IRWUS-Public-Review-Draft-ReportPAO7May21-v1.pdf
[9] SCAG, 6th Cycle Final RHNA Allocation Plan, available at https://scag.ca.gov/sites/main/files/file-attachments/6th-cycle-rhna-final-allocation-plan.pdf?1625161899

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES'
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

represented by the Intervenors, including, but not limited to: Carson – 5,618 total units (1,770 very-low income, 913 low-income, 875 moderate income, and 2,060 above moderate income); Compton – 1,004 total units (235 very-low income, 121 low income, 131 moderate income, and 517 above moderate income); Inglewood – 7,439 total units (1813 very-low income, 955 low income, 1,112 moderate income, and 3559 above moderate income); Hawthorne – 1,734 total units (445 very-low income, 204 low-income, 249, moderate income, and 836 above moderate income). Using the Metropolitan Water District's assumption of 2.9 persons per unit, Golden State's 5,000 AFY option contract could *alone* satisfy indoor water use for all of the City of Long Beach's — the seventh most populated City in California — Sixth Cycle RHNA allocation of 26,502 new units.

While Defendants do not dispute "the nexus between water and the development of housing in disadvantaged communities," (Dkt. No. 73 at 2), they fail to acknowledge the obvious link between the Project and the needs of the DACs as briefed in the Motion to Intervene. (Dkt. No. 57 at 23-24 (citing Villarino Dec., at ¶ 14-16), 25 (citing Apodaca Dec., at ¶ 5; Zaldivar-Motts Dec., at ¶ 9). The declarations supporting intervention discuss the significance of this water to the communities that desperately need it. Had Defendants listened to the DACs before making such a drastic decision to remand and vacate, they would have understood how urgent and time sensitive this project is – and the impact further delay will have on drought planning and housing projects on hold due to extreme multi-year drought.

### d. The DACs' Interest in Improved Water Quality Resulting from the Project Supports Intervention

In addition to well-documented water supply constraints facing disadvantaged communities that the Project would alleviate, water storage, supply and conveyance from the Project would also provide crucial back up resources for communities that rely solely or predominantly on groundwater for drinking water supplies and are facing higher levels of contamination as a result of climate change, industrial

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES'
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

pollution and state-mandated response levels. (*See, e.g.*, Dkt. 57 at 17, 22). Many small and rural water systems in California, particularly in the San Joaquin Valley and high desert regions rely on groundwater as the sole source for their water supply. The impacts of climate change are expected to result in more intense and prolonged droughts, shifts in water supply patterns, and increased evapotranspiration rates due to temperature rises which, in turn, increase irrigation demands while reducing surface supplies.[10] These impacts on surface water are expected to directly impact groundwater supplies through less recharge and greater reliance on groundwater.[11]

A recent article published by researchers from the University of California Los Angeles stated the problem bluntly:

> California's San Joaquin Valley is one of the world's most productive agricultural regions, providing crops that feed large sectors of the United States. The San Joaquin Valley is also home to some of the most contaminated drinking water in the country, housing about half of all the failing water systems in California. Safe drinking water is considered a human right in California since 2012 and yet, in the San Joaquin Valley, nearly 1 million residents are affected by unsafe drinking water. In some counties, contaminated groundwater is the source of drinking water for 99 percent of the population. Most of those affected reside in small, rural communities which are predominantly Latino and disproportionately poor, thus posing a great public health and social justice emergency.[12]

As aptly stated by Mr. Ortega, "it is both water quality …and drought that demands finding a backup supply" for many communities. See, Ashe Dec., Exhibit 1.

Proposed Intervenors have asserted a direct stake in improvements in water quality. *Id.* at 25 ("If the Project cannot move forward, disadvantaged communities will continue to suffer from lack of reliable water *quantity* and *quality.*")(emphasis in original); *id.* at 21 (DACs' interest lie with public health and safety of their

---

[10] See, San Luis & Delta-Mendota Water Authority, *2019 Westside-San Joaquin Integrated Regional Water Management Plan* at 2-39 — 2-40, available at https://sldmwa.org/IRWMP/WSJ%20IRWMP%202019%20Final_ADA-OK.pdf
[11] *Id.*, at 13-13.
[12] Ramos, P., *Toxic Tap: The Compound Behind the Deadly Tap Water in California's San Joaquin Valley* (Apr. 13, 2021), available at https://www.infews.ucla.edu/fews-blog/2021/4/13/toxic-tap-the-compound-behind-the-deadly-tap-water-in-californias-san-joaquin-valley

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES'
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

communities, including improved water quality); Sausedo Declaration, at ¶ 8 (water agency previously serving City of Compton was shut down due to poor water quality); Lizarraga Dec. at ¶ 14 (water from the Project would improve water quality for impoverished farmworker communities) (Dkt. No. 57-8). Defendants have not opposed (or even addressed) this significant protectable interest.

Water conveyed through the Project has the potential to improve water quality for disadvantaged communities by making new and stored water available as back up and supplemental supplies for communities experiencing contaminated groundwater. The Project increases the availability of and access to supplies of higher quality than what is available to the communities Intervenors represent. See, Ashe Dec., Exhibit 1. Access to higher quality water has several benefits including reduction of water rates and improved health outcomes for DACs and small water systems who have historically relied on water with higher contaminant levels. If additional clean water conveyances are jeopardized from the Project's denial or delay, that will exacerbate adverse health impacts in DACs by prolonging reliance on lower-quality water supplies, including impaired local groundwater sources. As such, the DACs' interest in improved water quality (and corresponding health and safety benefits) resulting from the Project is a significant, protectable interest.

### e. The DACs' Interest in Environmental Justice Principles Supports Intervention

The interests in environmental justice that the Proposed Intervenors seek to vindicate in this process are alone sufficient to warrant intervention. (Dkt. No. 57 at 22). Defendants "acknowledge Proposed Intervenors' commitment to environmental justice and the nexus between water and the development of housing in disadvantaged communities," and "have great respect for the goals of environmental justice and the values Proposed Intervenors have set forth." (Dkt. No. 73 at 2 and 15). Yet, they assert that the provision of water to such disadvantaged communities is not relevant to the disposition of the Project. Such lip service to equity is an ironic

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES'
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

continuation of the pattern and practice of marginalizing and underserving disadvantaged communities while offering words of moral support. Plaintiffs' complaint was filed under NEPA. The Council on Environmental Quality, which oversees the implementation of NEPA, has long required the Federal agencies to consider environmental justice in their activities under NEPA.[13]

Plaintiffs in this matter also consider NEPA a critical tool in the fight for environmental justice.[14] Naturally, they did not oppose intervention (Dkt. No. 72),[15] and paradoxically, Defendants did not challenge Plaintiff's standing to challenge the Project. More recently, the Biden Administration, building on Executive Order 14008, released a Climate and Economic Justice Screening tool to help agencies identify disadvantaged communities to ensure that everyone is receiving the benefits intended from Federal programs.[16] This is part of "a commitment to deliver 40 percent of the overall benefits of Federal climate, clean energy, affordable and sustainable housing, clean water, and other investments to disadvantaged communities that are marginalized, underserved, and overburdened by pollution." *Id.*

---

[13] NEPA declares a national policy, recognizing that "each person should enjoy a healthful environment and that each person has a responsibility to contribute to the preservation and enhancement of the environment." 42 U.S.C. § 4331(c). Executive Order 12898, issued in 1994, established the responsibility of each Federal agency to "make achieving environmental justice part of its mission by identifying and addressing, as appropriate, disproportionately high and adverse human health or environmental effects of its programs, policies, and activities on minority populations and low income populations ...." In 1997 CEQ issued a guidance document for agencies ensure that environmental justice is included in NEPA decisions. CEQ Guidance: Environmental Justice: Guidance under the National Environmental Policy Act *available at* https://www.epa.gov/sites/default/files/2015-02/documents/ej_guidance_nepa_ceq1297.pdf?VersionId=78iNGtdwSTz5E2x.H0aHq.E96_Tphbgd

[14] Sierra Club, The Fight to Preserve NEPA: Climate Protection and Environmental Justice (July 27, 2020) *available at* https://www.sierraclub.org/articles/2020/07/fight-preserve-nepa-climate-protection-and-environmental-justice

[15] For example, Sierra Club successfully argued for EJ consideration in a NEPA action against BLM in *California v. Bernhardt*, 472 F.Supp.3d 573, 621 (N.D. Cal. 2020) (holding that the agencies failed to adequately consider that the environmental impacts of the challenged action disproportionately affected Native Americans living in low-income communities).

[16] CEQ, CEQ Publishes Draft Climate and Economic Justice Screening Tool, Key Component in the Implementation of President Biden's Justice40 Initiative (02/18/2022) *available at* https://www.whitehouse.gov/ceq/news-updates/2022/02/18/ceq-publishes-draft-climate-and-economic-justice-screening-tool-key-component-in-the-implementation-of-president-bidens-justice40-initiative/

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES' REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

1   Defendants cannot on one hand acknowledge the disparate impact water insecurity

2   has on disadvantaged communities, and on the other hand state that disadvantaged

3   communities have no interest in a NEPA case concerning one of the largest water

4   infrastructure projects in the Western United States, and the *only* pipeline and storage

5   network capable of connecting the Colorado River Aqueduct and State Water Project

6   to conserve and manage increasingly scarce supplies, particularly from the distressed

7   Colorado River.

8   **III.   CADIZ DOES NOT ADEQUATELY REPRESENT THE DACS'**

9   **INTERESTS IN THIS CASE**

10  Proposed Intervenors' Motion demonstrates that no other party in this litigation will

11  adequately represent their interests. (Dkt. No. 57 at 26-28). Defendants have

12  challenged this, suggesting that because Cadiz shares an interest in defending the

13  Project they will represent the Proposed Intervenors' interests. (Dkt. No. 73 at 13).

14  Proposed Intervenors bear a "minimal" burden of demonstrating that Cadiz may not

15  adequately represent its interest. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d

16  810, 822–23 (9th Cir. 2001); citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525,

17  528 (9th Cir. 1983). Proposed Intervenors need only show that representation of its

18  interests by Cadiz "may be" inadequate. *Id.*

19        In overcoming this presumption, Defendants contends that "what matters" for

20  purposes of overcoming this presumption is that Cadiz and the DACs "share the same

21  ultimate objective." (Dkt. 73 at 13). This is not the correct legal standard. "Where an

22  applicant for intervention and an existing party have the same ultimate objective, a

23  presumption of adequacy of representation arises," that presumption is rebuttable

24  upon a showing that the applicant and the existing parties "*do not have sufficiently*

25  *congruent interests.*" See, e.g., *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d

26  810, 823 (9th Cir. 2001) (noting that City intervenor's range of considerations in

27  development is broader than the profit-motives of the developer); *California Dump*

28  *Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 308 (E.D. Cal. 2011) (noting that

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES'
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

California Air Resources Board is a public agency that must balance relevant environmental and health interests with competing resource constraints and the interests of various constituencies that can be at odds with the environmental group's interests).

As discussed throughout the Motion and supporting declarations disadvantaged communities in California – particularly those represented by the proposed intervenors – suffer disproportionately from poor water quality, industrial contamination, aging pipelines, and underinvestment in critical infrastructure to support minimum health and safety standards and economic growth. While the Project will help solve these problems, these interests are unique to the Proposed Intervenors. Cadiz shares no direct interest in environmental justice and the provision of housing. Indeed, in other sections of the response, Defendants argue that "Cadiz is under no obligation to provide water to the disadvantaged communities represented by Proposed Intervenors." (Dkt. No. 73 at 12) (suggesting in other places that this water is intended only for "affluent communities like the City of Thousand Oaks"). Thus, by Defendants own supposition, the interests of Cadiz and Intervenors are not sufficiently congruent.

## IV.     THE DACS' PARTICIPATION IN THIS MATTER SHOULD NOT BE RESTRICTED.

Defendants do not oppose the Proposed Intervenors' request for permissive intervention, but only if there are draconian restrictions on participation in this matter. (*See*, Dkt. No. 73 at 14) (arguing that Proposed Intervenors should not be permitted to bring new claims, expand the ligation, delay the case, or file motions challenging the content of the administrative record). Defendants' request for conditional approval of intervention is based on a misguided belief that silencing the Proposed Intervenors is necessary for ensuring the "efficient resolution of this matter." *Id*. This motivation in rushing resolution of this case is consistent with Defendants rush to vacate the underlying decisions without acknowledging the

PROPOSED DEFENDANT-INTERVENORS DISADVANTAGED COMMUNITIES'
REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

significant adverse effects to the Proposed Intervenors. The Proposed Intervenors should be granted intervention without any restrictions and be permitted to present their interests in full.

## CONCLUSION

For the reasons set forth above, the Proposed Intervenors request that the Court grant their Motion to Intervene as of right pursuant to Rule 24(a), or in the alternative, grant permissive intervention under Rule 24(b), with no restrictions on party status or participation.

DATED: February 24, 2022        Respectfully submitted,

HOLLAND & KNIGHT LLP

By:   */s/ Kevin Ashe*                     
          Jennifer Hernandez
          Kevin J. Ashe
          Rafe Petersen (*pro hac vice*)

*Attorney for Proposed Defendant-Intervenors, Community Build, Inc., Southern Christian Leadership Conference of Greater Los Angeles, Los Angeles Metropolitan Churches, NewStart Housing Corporation, The Two Hundred for Homeownership, Farmworkers Institute for Education & Leadership Development, League of United Latin American Citizens of California, and La Cooperativa Campesina de California.*

Holland & Knight LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

## PROOF OF SERVICE

***Center for Biological Diversity, et al  v. U.S. Bureau of Land Mgmt., et al.***
**Case No.: 2:21-cv-02507-GW-AS**

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 50 California Street, Suite 2800, San Francisco, CA 94111.

On **February 24, 2022**, I electronically filed and served the attached document:

- **PROPOSED DEFENDANT- INTERVENORS COMMUNITY BUILD, INC., ET AL.'S REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

with the Clerk of the Court using the CM/ECF system which will then send a notification of such filing to the following:

***Please see attached Service List.***

I declare that I am employed in the office of a member of the bar of this Court whose direction the service was made.

Executed on **February 24, 2022**, at San Francisco, California.

Reena Kaur

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900
Fax: (415) 743-6910

1
2
3
4
5
6
7
8
9
10
11
12

Holland & Knight LLP
3 Park Plaza, Suite 1400
Irvine, CA 92614-8537
Tel: 949.833.8550
Fax: 949.833.8540

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Center for Biological Diversity, et al v. U.S. Bureau of Land Mgmt., et al.*
**Case No.: 2:21-cv-02507-GW-AS**

## SERVICE LIST

Aruna Prabhala
Lisa T. Belenky
Center for Biological Diversity

aprabhala@biologicaldiversity.org
lbelenky@biologicaldiversity.org

Todd Kim
Assistant Attorney General
Luther L. Hajek
U.S. Department of Justice
Environment & Natural
  Resources Division

luke.hajek@usdoj.gov

Gregory Cahill Loarie
Earthjustice

gloarie@earthjustice.org
eforsyth@earthjustice.org

Lawrence J. Jensen
Diane C. De Felice
Christopher O. Murray
BROWNSTEIN HYATT FARBER
  SCHRECK, LLP

ljensen@bhfs.com
ddefelice@bhfs.com
cmurray@bhfs.com